UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SCOTT WHITAKER,

        Plaintiff,

vs.                    Case No.  2:05-cv-72-FtM-29DNF

LEE MEMORIAL HEALTH SYSTEM, a
political subdivision of the State
of Florida,

        Defendant.

_____

**OPINION AND ORDER**

_____This matter comes before the Court on Defendant's Motion to Dismiss Complaint (Doc. #12) filed on April 11, 2005.  Defendant included a partial copy of the contract between defendant and plaintiff's insurance company, and requested that the Court convert the Motion to Dismiss as to Count III to a partial summary judgment motion.  The Court declines to convert the motion.  Plaintiff filed his Response to Motion to Dismiss or Summary Judgment (Doc. #19) on May 5, 2005.

**I.**

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff.  Christopher v. Harbury, 536 U.S. 403, 406 (2002); Hill v. White, 321 F.3d 1334, 1335 (11th

Cir. 2003). A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts that would entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted); Marsh v. Butler County, Ala., 268 F.3d 1014, 1022 (11th Cir. 2001)(en banc). To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002). The Court must limit its consideration to well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed. La Grasta v. First Union Secs., Inc., 358 F.3d 840, 845 (11th Cir. 2004). Dismissal is nonetheless warranted if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326 (1989); Day v. Taylor, 400 F.3d 1272, 1275 (11th Cir. 2005); Brown v. Crawford County, Ga., 960 F.2d 1002, 1009-10 (11th Cir. 1992). The Court need not accept unsupported conclusions of law or of mixed law and fact in a complaint. Marsh, 268 F.3d at 1036 n.16.

## II.

Plaintiff Scott Whitaker (plaintiff or Whitaker) alleges that as a result of an automobile accident he sought and received medical treatment from defendant Lee Memorial Health System

(defendant or LMHS), a political subdivision of the State of Florida. Whitaker was hospitalized for four days in September, 2003. This case involves the interplay of three sets of contracts relating to payment for his medical care provided by LMHS.

Plaintiff signed two identical contracts (collectively the Hospital Contract) with LMHS stating that, in exchange of medical services, he agreed to be "jointly and severally obligated to pay all charges arising from the services or treatment rendered to the patient..., which are not covered by insurance or other hospitalization benefits.... This obligation to pay all charges is unconditional and absolute." (Doc. #1, Ex. C). The Hospital Contract also provided that plaintiff "assign[s] payment of all insurance benefits under all existing insurance policies, which are payable by reason of any services rendered within the Lee Memorial Health System, to Lee Memorial Health System." (Id.).

Plaintiff has three contractual sources of insurance to cover the medical services provided by LMHS in connection with the automobile accident. Plaintiff is a member of a preferred provider organization (PPO) established by Blue Cross Blue Shield of Florida, Inc. (BCBSF) which provides general health care coverage not limited to automobile accidents. Plaintiff also has an automobile insurance policy with Allstate Insurance Company providing a total of $37,000 in applicable benefits, and an automobile insurance policy with United States Automobile Association (USAA) providing $600,000 in uninsured motorist

coverage.  As relevant to this case, coverage under these later two policies is limited to injuries resulting from automobile accidents.

Finally, plaintiff alleges that LMHS and BCBSF entered into a contract (the Managed Care Contract) under which LMHS agreed to provide health care services to members of BCBSF's PPO at discounted rates.  Plaintiff asserts, apparently without ever having seen the Managed Care Contract, that under this contract LMHS agreed to accept BCBSF's discounted payment as full satisfaction of all hospital bills accrued by plaintiff.

The Complaint alleges that LMHS received BCBSF's full (but discounted) payment for plaintiff's hospital bills, which is the limit of LMHS's entitlement.  Nonetheless, LMHS has asserted a right to collect from plaintiff's other insurance carriers the difference between the discounted amount and its total charges.  To collect this difference, LMSH has placed liens on plaintiff's benefits under the Allstate policy and the USAA policy pursuant to authority granted by a Florida statute.  LMHS collected $12,000 under the Allstate policy lien, and claims $37,327.85 under liens on the Allstate and USAA uninsured motorist policies.  Plaintiff has pending claims for benefits under the Allstate and USAA policies, and asserts that LMHS waived its statutory lien rights when it entered into the Managed Care Contract with BCBSF.

**III.**

**A.   Count I – Breach of Contract**

Count I alleges that LMHS breached the Hospital Contract. Under Florida law, the elements of a breach of contract action are (1) a valid contract; (2) a material breach; and (3) damages. Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir. 1999); citing Abruzzo v. Haller, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992). Plaintiff asserts that LMHS was required to accept the discounted payment by BCBSF as full satisfaction for his hospital bills, but has refused to do so in breach of the Hospital Contract. Since LMHS is not owed anything, in plaintiff's view, it also breaches the Hospital Contract by collecting and attempting to collect the differential amount pursuant to liens placed upon the two other insurance policies.

Defendant argues that plaintiff's breach of contract claim fails as a matter of law because no breach has occurred. Defendant focuses on plaintiff's contractual obligation "to pay all charges arising from the services or treatment rendered to the patient..., which are not covered by insurance or other hospitalization benefits.... This obligation to pay all charges is unconditional and absolute." LMHS asserts that plaintiff's obligation to pay "all charges" is not limited by its Managed Care Contract with BCBSF, that "all charges" have not been paid, that plaintiff has assigned his rights to the insurance policies to LMHS, and that

LMHS's collection efforts are therefore not in breach of the Hospital Contract.

The Court finds that Count I survives a motion to dismiss. Plaintiff has alleged that a valid contract exists, that defendant materially breached the contract by attempting to collect money when none was due (by enforcing statutory liens for the portion of the medical bills in excess of the discounted payments), and that plaintiff suffered damages as a result of the breach.  Whether LMHS is due money under the Hospital Contract is a disputed fact which cannot be resolved on the face of the Complaint.  Therefore, the Motion to Dismiss as to Count I will be denied.

**B.   Count III – Third Party Beneficiary Claim of Breach of Contract**

In Count III, plaintiff alleges that as a member of the BCBSF-PPO he is a third party beneficiary of the Managed Care Contract between BCBSF and LMHS, that the Managed Care Contract requires LMHS to accept the BCBSF discounted payment as satisfaction in full of his hospital charges (with certain exceptions not in dispute), and that its failure to do so and its assertion of liens on the two other insurance policies is a breach of the Managed Care Contract.

Defendant argues that plaintiff failed to allege the Managed Care Contract was intended to primarily and directly benefit plaintiff as a third party and failed to properly allege that defendant breached the Managed Care Contract.  Defendant attaches a portion of the Managed Care Contract with BCBSF to establish that

the contract specifically states that no third party has rights under the contract and that defendant is permitted to bill plaintiff for the differential amount.

"Under Florida law, a third party may enforce an agreement between others only if it is an intended beneficiary, not an incidental beneficiary, of that agreement." Maccaferri Gabions, Inc. v. Dynateria Inc., 91 F.3d 1431, 1441 (11th Cir. 1996), citing Metropolitan Life Ins. Co. v. McCarson, 467 So. 2d 277, 279 (Fla. 1985). "A party is an intended beneficiary only if the parties to the contract clearly express, or the contract itself expresses, an intent to primarily and directly benefit the third party." Maccaferri Gabions, Inc., 91 F.3d at 1441, quoting Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd., 647 So.2d 1028, 1031 (Fla. 4th DCA 1994); see also Bochese v. Town of Ponce Inlet, 405 F.3d 964, 982 (11th Cir. 2005) ("Florida courts require that there must have been an intent to benefit the third party at the time the promisor and promisee entered into the contract in order for the third party to be classified as either a donee or a creditor beneficiary."). Thus, in order to plead a cause of action for breach of a third party beneficiary contract, the following elements must be set forth: (1) a contract between A and B; (2) an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit C, the third party (or a class of persons to which that party belongs); (3) breach of that contract by either A or B (or both);

and (4) damages to C resulting from the breach. <u>Biscayne Inv.
Group Ltd. v. Guarantee Mortgage Servs.</u>, 903 So. 2d 251, 254 (Fla.
3rd DCA 2005); <u>Caretta Trucking, Inc.</u>, 647 So. 2d at 1031.
Additionally, in order to find the requisite intent, it must be
shown that both contracting parties intended to benefit the third
party; it is insufficient to show that only one party unilaterally
intended to benefit the third party. <u>Biscayne Inv. Group Ltd.</u>, 903
So. 2d at 254; <u>Bochese</u>, 405 F.3d at 981-84.

The Court doubts that consideration of the Managed Care
Contract requires that the motion to dismiss be converted to a
motion for summary judgment. <u>Day</u>, 400 F.3d at 1275-76; <u>La Grasta</u>,
358 F.3d at 845. If the Court considers the partial contract
submitted by defendant, it appears[1] that plaintiff is not a third-
party beneficiary. Article II, Section 3.2 provides: "Nothing in
this Agreement is intended to be construed, or shall be deemed, to
create any rights or remedies in any third party." Far from
demonstrating an intent to primarily benefit a third party, the
contract appears to demonstrate an intent not to create rights or
remedies in third parties. Additionally, the contract also
undermines the claimed breach, since Article VIII, Section 8.3(c)
authorizes LMHS to contract directly with plaintiff to recover
amounts charged by LMHS that are not payable or covered by BCBSF.

---

[1]The Court says "appears" because the intent of the parties is
determined by the terms of the contract as a whole, <u>Bochese</u>, 405
F.3d at 982, and the whole contract is not contained in the record.

Nonetheless, the Court need not consider the Managed Care Contract to determine that the allegations of Count III are insufficient. While Count III alleges that plaintiff is a third-party beneficiary, this is a legal conclusion which is not supported by any facts. Plaintiff's status as a member of the BCBSF-PPO and the "Blue Choice" plan is not sufficient to properly allege a third-party beneficiary relationship because this does not assert an intent by both parties to the Managed Care Contract to primarily and directly benefit a third party. Therefore, Count III will be dismissed without prejudice.

**C.  Section 1983 Claims - Counts V and VII**

Title 42 U.S.C. § 1983 imposes liability on any person who, under color of state law, deprives a person "of any rights, privileges, or immunities secured by the Constitution and laws." To establish a claim under 42 U.S.C. § 1983, plaintiff must allege and ultimately prove that (1) defendant deprived him of a right secured under the United States Constitution or federal law, and (2) such deprivation occurred under color of state law. Arrington v. Cobb County, 139 F.3d 865, 872 (11th Cir. 1998); U.S. Steel, LLC v. Tieco, Inc., 261 F.3d 1275, 1288 (11th Cir. 2001). In addition, plaintiff must allege and establish an affirmative causal connection between the defendant's conduct and the constitutional deprivation. Troupe v. Sarasota County, Florida, ___ F.3d ___, No. 04-10550, 2005 WL 1819363 (11th Cir. August 3, 2005); Marsh, 268 F.3d at 1059. Section 1983 is not itself a source of substantive

-9-

rights, but merely provides a procedural mechanism for vindicating federal rights created elsewhere.  "One cannot go into court and claim a 'violation of § 1983' – § 1983 by itself does not protect anyone against anything." Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002), quoting Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 617 (1979).  See also Skinner v. City of Miami, Fla., 62 F.3d 344, 347 (11th Cir. 1995).

### (1)  Count V – Equal Protection

Count V appears to include two separate claims, both alleging a violation of plaintiff's equal protection rights.  Count V alleges, pursuant to 42 U.S.C. § 1983, that LMHS violated plaintiff's equal protection rights under the Fourteenth Amendment of the United States Constitution.  A § 1983 claim is limited to federal rights, Gonzaga Univ., 536 U.S. at 279-80, and therefore does not enforce state-created equal protection rights. Knight v. Jacobson, 300 F.3d 1272, 1276 (11th Cir. 2002).  Count V also alleges a violation of plaintiff's equal protection rights under Article I, Section 2 of the Florida Constitution.  Neither party, however, asserts that the Florida equal protection rights are any different than the federal equal protection rights.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of laws." U.S. Const. amend. XIV, § 1.  "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's

jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), quoting Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 445 (1923).  The Equal Protection Clause "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." Vacco v. Quill, 521 U.S. 793, 799 (1997).  See also Gary v. City of Warner Robins, Ga., 311 F.3d 1334, 1337 (11th Cir. 2002)("The Equal Protection Clause requires that the government treat similarly situated persons in a similar manner.")  "The central mandate of the equal protection guarantee is that '[t]he sovereign may not draw distinctions between individuals based solely on differences that are irrelevant to a legitimate governmental objective.'" Lofton v. Secretary of Dep't of Children and Family Servs., 377 F.3d 1275, 1277 (11th Cir. 2004), cert. denied 125 S.Ct. 869 (2005), quoting Lehr v. Robertson, 463 U.S. 248, 265 (1983).  However, "[t]he Equal Protection Clause does not forbid classifications.  It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." Nordlinger v. Hahn, 505 U.S. 1, 10 (1992).  "Therefore, unless the case involves a suspect class or a fundamental right, the Equal Protection Clause requires only that the classification be rationally related to a legitimate state

interest."  <u>Panama City Med. Diagnostic Ltd. v. Williams</u>, 13 F.3d 1541, 1545 (11th Cir. 1994).[2]

Count V sets forth two bases for the alleged violation of plaintiff's equal protection rights.  First, plaintiff alleges that the violation of the Hospital Contract and the violation of the Managed Care Contract are unconstitutional deprivations of his right to equal protection under both the federal and State constitutions.  (Doc. #1, ¶¶ 90-91, 97-98).  Second, Count V alleges that "[a]ccident victims who are non-indigent patients with sufficient health care coverage are discriminated against and treated unequally from non-indigent patients with health care coverage who were not the victims of an accident."  (Doc. #1, ¶ 97).  The Court concludes that neither basis states an equal protection claim.

While the Complaint seems to assert that a breach of contract by a government entity is a *per se* denial of equal protection, plaintiff does not make that argument in his Response (Doc. #19, pp. 12-18).  The Court finds that any assertion that there is an equal protection violation anytime a government agency breaches a contract is without merit and does not state a claim upon which relief may be granted.  E.g., <u>Medical Laundry Servs. v. Board of Trs.</u>, 906 F.2d 571 (11th Cir. 1990).  Plaintiff cannot bootstrap a

---

[2]Plaintiff does not argue that he is a member of a suspect class or that a fundamental right is involved.

simple breach of contract claim into a constitutional issue simply by contracting with a government agency.

Plaintiff also argues that he was discriminated against in violation of his equal protection rights. The Complaint asserts that LMHS is an agency of the State of Florida; that plaintiff has property rights of a constitutional dimension in the insurance policies and proceeds and in the vested cause of action for economic damages against the insurance carriers under the Allstate and USAA policies; that LMHS's placement of the lien on the insurance proceeds pursuant to its administration of a state statute creating such a lien is a deprivation of these property rights; that all hospital patients are similarly situated, including other BCBSF insureds treated by defendant who do not have a potential claim against a third party or an additional source of insurance; that plaintiff was treated differently from other patients when LMHS placed the liens on his insurance proceeds in an effort to collect the differential amount; and that there is no rational basis for the different treatment.

Defendant argues that the Complaint did not sufficiently allege intentional or purposeful discrimination. The Court finds that the Complaint is sufficient to allege intentional or purposeful discrimination under the federal notice requirements summarized above. (Doc. #1, ¶¶ 92-97).

Defendant also asserts that plaintiff fails to identify a constitutionally protected right under either the Hospital Contract

-13-

or the Managed Care Contract.  Count V, however, does not assert constitutionally protected interests under these contracts, but rather asserts constitutionally protected property rights in the insurance policies and proceeds and to a vested cause of action for economic damages.  The cases cited by plaintiff (Doc. #19, p. 15 nn.16, 17) establish that these constitute property under Florida law.

Defendant next contends that no facts are alleged showing plaintiff is similarly situated to others who are treated differently by LMHS.  Rather, defendant contends, all the facts alleged show two differently situated groups of patients. Plaintiff responds that LMHS attempts to collect payment in excess of the discounted portion of the hospital bills from BCBSF PPO subscribers like himself, whereas LMHS does not seek the excess amount from other BCBSF PPO subscribers who do not have a potential claim against a third party or another insurer.  This, plaintiff argues, treats members of the BCBSF-PPO, and others, differently although they are similarly situated.

Plaintiff's situation is that he incurred hospital charges from LMHS for which he had insurance coverage under a group health insurance policy and, because his injuries were the result of a motor vehicle accident, also had coverage from additional insurance sources which relate specifically to such accidents.  In this situation, LMHS does not accept the group health insurance as full payment of its charges, but seeks to recover the difference from

-14-

the other insurance policies, utilizing its legal ability to place a lien on such insurance proceeds.  The other group described in the Complaint contains patients, including BCBSF-PPO members, who have incurred hospital charges from LMHS and who have only health insurance to pay their hospital bills because their injuries did not result from a motor vehicle accident and thus there is no additional source of insurance available to such persons.  In this second situation, LMHS accepts the discounted health insurance as full payment of its charges because there is no additional insurance source.

The Court finds that plaintiff and patients like him are not similarly situated to the second group of patients described in Count V.  The obvious difference is that the second group lacks the additional source(s) of insurance, so there is nothing for LMHS to go after or upon which to place its lien.  The Complaint does not assert that there are others in plaintiff's situation - patients with health care insurance plus other insurance sources - who have not had collection efforts or liens placed on the additional sources of insurance.

Finally, the Court agrees with defendant that the Complaint does not and cannot allege the lack of a rational basis for the disparate treatment of the two groups described in Count V.  It is certainly a rational decision for the Florida legislature to allow LMHS to place liens in an attempt to collect charges due to LMHS from additional sources of insurance.  The rational basis for the

disparate treatment is the lack of additional insurance by the second group.  Plaintiff's argument that the lien placement is not rational because he does not owe any money assumes that his breach of contract argument is correct.   It does not undermine the rational basis for the statutory system or LMHS's placement of a lien in cases it believes money is due.  The dispute over whether money does not convert this contract dispute into a constitutional claim.  Accordingly, Count V will be dismissed.

### (2)   Count VII – Due Process

Count VII alleges that LMHS violated plaintiff's due process rights under the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Florida Constitution. Count VII asserts that LMHS violated plaintiff's due process rights by violating the Hospital Contract by attempting to enforce its statutory lien when no money is owed it by plaintiff by virtue of the Managed Care Contract.  As with the equal protection count, Count VII contains both a § 1983 claim and an independent state law claim, although neither party asserts the rights are different. Plaintiff has no substantive due process rights in state-created rights.  Dacosta v. Nwachukwa, 304 F.3d 1045, 1048-49 (11th Cir. 2002); Skinner, 62 F.3d at 347.

The Fourteenth Amendment to the United States Constitution explicitly guarantees to each citizen that no State shall "deprive any person of life, liberty, or property, without due process of law...."  U.S. Const., amend. XIV, § 1.  The Supreme Court has

-16-

determined that the Due Process Clause provides both procedural and substantive rights.  Zinermon v. Burch, 494 U.S. 113, 125 (1990); Doe v. Moore, 410 F.3d 1337, 1342 (11th Cir. 2005).  The substantive due process component protects an individual's life, liberty and property against "certain government actions regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331 (1986).

The substantive due process component of the Due Process Clause protects only those rights that are "fundamental," that is, rights that are so implicit in the concept of ordered liberty that neither liberty nor justice would exist if they were sacrificed. Moore, 410 F.3d at 1342-43; McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994)(en banc).  "Fundamental rights are those rights created by the Constitution." Greenbriar Village, L.L.C. v. Mountain Brook City, 345 F.3d 1258, 1263 (11th Cir. 2003).

No such fundamental rights are at issue in this case.  No fundamental constitutional right is involved simply because a government entity allegedly violates a contract or places a lien of state-created property interests.  Plaintiff's claim that he owes no money to LMHS because LMHS has no right to collect payment above that available from BCBSF does not convert this contract dispute into a due process issue, and does not result in the claimed "irrational administration of its lien law." Because no violation

-17-

of substantive due process is alleged, Count VII will be dismissed.

**D.    Declaratory Judgment**

Counts II, IV, VI, VIII, and IX seek declaratory relief under 28 U.S.C. § 2201.  Both parties agree that § 2201 does not confer any independent basis for federal jurisdiction as to these counts.  Household Bank v. JFS Group, 320 F.3d 1249, 1253 (11th Cir. 2003).  Defendant argues that there is no basis for federal jurisdiction because diversity of citizenship is lacking and the two counts purporting to state federal question claims should be dismissed.  Because the Court finds that plaintiff has not stated any federal claim, the Court agrees with defendant.  Consequently, subject matter jurisdiction does not exist, and Counts II, IV, VI, VIII, and IX will be dismissed.  While Count I remains viable, it too is a state law claim and the Court exercises its discretion pursuant to 28 U.S.C. § 1367(c) and declines to exercise jurisdiction.

Accordingly, it is now

**ORDERED:**

1.    Defendant's Motion to Dismiss Complaint (Doc. #12) is **GRANTED** to the extent that Counts II through IX are dismissed, and is **DENIED** as to Count I.  However, Count I is dismissed for lack of subject matter jurisdiction.

    2.  The Clerk of the Court shall terminate all pending motions and deadlines, and close the file.

    **DONE AND ORDERED** at Fort Myers, Florida, this __30th__ day of August, 2005.


                                                                                         JOHN E. STEELE
                                          United States District Judge